Nicanor Cisneros GONZALES, Appellant,

v.

The STATE of Texas, Appellee.

No. 57861.

Court of Criminal Appeals of Texas,
Panel No. 2.

June 6, 1979.

Pat McDowell, Dallas, for appellant.

Andy Shuval, Dist. Atty., Hereford, Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, TOM G. DAVIS and DALLY, JJ.

· OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for possession of heroin. Punishment, enhanced by two prior felony convictions, was set at life.

At the outset, appellant contends the court erred "in permitting the jury to hear testimony that the defendant said he had been in trouble before for burglary" (at the guilt stage of the trial).

At about 12:30 in the morning on January 28, 1976, appellant was stopped by Deaf Smith County officers while driving an automobile in a westerly direction on Farm-to-Market Road 1062. Deputy Sheriffs Judy Murray and Johnny Moya, along with dispatcher Joan Heun and David Ruland, were patrolling following a volleyball game in which they had participated when they observed the vehicle appellant was driving. Murray testified, "I noticed a vehicle weaving in the road and we stopped a subject for possible DWI." Murray went up to the vehicle after it was stopped, asked appellant for his driver's license, and "I asked him to have a seat in the patrol car while we ran a check on his driver's license." Deputy Moya testified that while the check was being made on appellant's driver's license, "I asked the defendant some questions." Under questioning by appellant's counsel, Moya agreed that appellant would not have been "allowed to go at least until you-all were through . . . " and "for all practical purposes he was under arrest." Under questioning by the prosecutor, Moya stated that appellant had not been arrested for any crime. The admission of the following testimony by Moya over appellant's objection forms the basis of appellant's complaint:

"I asked the defendant if he had been in trouble before and he stated that he had and I asked him what for and he said burglary."

Moya stated that after obtaining appellant's consent they searched his car and found the contraband.

The State urges that appellant was not under arrest and that the statement was admissible to show the "state of mind and condition of the Defendant as to the matter of consent."

In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the United States Supreme Court held that evidence obtained as the result of a custodial interrogation was inadmissible unless the State proved that proper warnings were given to the defendant and an affirmative waiver of rights was shown. See Art. 38.22, V.A.C. C.P. Custodial interrogation was defined in *Miranda* as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." It is not necessary that an accused be under formal arrest prior to the interrogation for *Miranda* rights to arise. *Ancira v. State*, Tex.Cr.App., 516 S.W.2d 924. A number of factors are significant in determining whether a defendant is in custody. Probable cause to arrest, subjective intent of the police, focus of the investigation, and subjective belief of the defendant have all been deemed relevant. *United States v. Phelps*, 443 F.2d 246 (5th Cir. 1971); *Newberry v. State*, Tex.Cr.App., 552 S.W.2d 457; *Ancira v. State, supra*. In *Miranda*, the Supreme Court stated that "in custody" was a shorthand phrase for what *Escobedo v. Illinois*, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, described as an investigation which has focused on the accused.

In *Brown v. State*, Tex.Cr.App., 475 S.W.2d 938, this Court found that information obtained from the defendant did not come as the result of a custodial interview. There an investigation was being made into an unsolved murder and the prosecutor and officers were checking on all sources of information. The defendant was asked to come to the district attorney's office since he had discovered the bodies of the victims. The defendant, accompanied by his uncle, went voluntarily to the prosecutor's office and left with his uncle after the interview was concluded. It was not until additional information came to the attention of law enforcement officials that the investigation began to focus on the defendant.

Officer Murray, the driver of the patrol car, described the driving of appellant prior to his being stopped, "He would drive across the center part of the roadway, he would go off of the edge of the roadway, hit the dirt, come back onto the roadway, but as far as how many times I didn't count them."

■ Clearly, the officers had the right to stop appellant's car after observing the manner in which it was being driven. Undoubtedly, appellant was the subject of an investigation undertaken by the officers by checking on his driver's license. While the questioning of appellant did not take place at the station house, it occurred in a patrol car and the testimony of Murray reflects that she and Moya were in uniform and armed. In *Ancira*, we noted that there was little difference in questioning in the police station and interrogation in a patrol car. While appellant was seated in the patrol car with the officers awaiting a radio report on his driver's license, it is inconceivable that he was free to leave if he had desired to do so. All of the foregoing factors dictate that appellant's freedom of action at this point in time had been limited in a significant way.

Our review of all the pertinent circumstances in the instant case dictates that the complained-of statement by appellant about being in trouble for burglary (in response to the officer's questions) resulted from custodial inquiry. The failure to comply with *Miranda v. Arizona*, supra, and Art. 38.22, supra, rendered same inadmissible.

■ Further, we cannot agree that the conversation between the officer and appellant was admissible as res gestae of the offense or arrest. The complained-of utterance in response to the officer's inquiry cannot be characterized as a spontaneous outgrowth of the main fact. *Newberry v. State, supra*; *Smith v. State*, Tex.Cr.App., 507 S.W.2d 779.

The admission of the complained-of statement was error and requires reversal of this cause.

The judgment is reversed and the cause remanded.